Opinion issued June 23, 2005



















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00814-CR
NO. 01-04-00815-CR
____________

ANTHONY AUTRIE BELL, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the County Court at Law No. 1
Fort Bend County, Texas
Trial Court Cause No. 86044A
 

 
 
MEMORANDUM OPINION
             In one case, under two separate counts, a jury found appellant, Anthony Autrie
Bell, guilty of the offenses of resisting arrest


 and evading arrest,


 and the trial court
assessed his punishment at confinement for 180 days and a fine of $300. The trial
court suspended the imposition of the sentence and placed appellant on community
supervision. In two points of error, appellant contends that his trial counsel rendered
ineffective assistance. We affirm. 
Factual Background
          Shirley Douglas testified that, on May 19, 1999, at about 7:00 p.m., she saw
appellant, who lived across the street from Douglas, and about eight 16- to 18-year-old persons running into her yard while playing basketball in the street in front of her
house. When she asked the group not to come into her yard, appellant “started
cursing her out,” called her “a bitch and a whore,” and “was being loud.” Two law
enforcement officers, who were dressed in uniforms, arrived in a marked patrol car
after Douglas called the police department. Douglas told Houston Police Officer R.
Morales what had occurred, and, after pointing out appellant, Morales approached
appellant, who accompanied Morales to the patrol car. Douglas saw that “[t]he
officer was trying to talk to [appellant], and [appellant] was being disrespectful
towards the officer” and “was cursing.” Morales, without handcuffing appellant,
placed appellant in the patrol car. After Morales obtained more information from
Douglas, Morales returned to the patrol car, removed appellant from the backseat, and
asked him to place his hands behind his back in order to handcuff appellant. 
However, appellant turned around, pushed Morales with his elbow, and ran away into
a nearby wooded area. She also saw either or both Morales or Houston Police Officer
S. Childers run after appellant. Douglas heard Morales tell appellant that appellant
was under arrest and also heard both officers yell for appellant to stop. 
          Officer Morales testified that, when he and Officer Childers were dispatched
to Douglas’s house, he saw six to eight males congregating in the street near
Douglas’s house. After speaking with Douglas regarding the incident, he approached
appellant, who was standing in his own driveway across the street. Morales then
asked appellant to walk with him to the patrol car to obtain appellant’s statement. 
Morales performed a weapons search on appellant and placed him in the backseat of
the patrol car, but Morales told appellant that he was not under arrest at that time.
After determining from Douglas’s statement that he had enough information to arrest
appellant for “abusive language and disorderly conduct,” Morales returned to the
patrol car. Morales advised appellant that he was under arrest, removed him from the
backseat, and asked him to place his hands on the patrol car’s trunk. As Morales was
reaching for appellant’s arm in order to handcuff appellant, appellant turned around
and pushed Morales with his elbow, which caused Morales to fall to the ground.
Appellant ran into an empty field at the end of the street, and Morales told appellant
to stop. Morales then got into his patrol car and attempted to follow appellant in the
car, while Officer Childers attempted to follow appellant on foot. Neither officer was
able to capture appellant. 
          In his defense, appellant called Teresa Jernigan, appellant’s mother, and Eric
Bundage, Shonn Campbell, and Bryan Hightower, appellant’s long-time friends. 
Jernigan testified that, on May 19, 1999, she was preparing for appellant’s high
school graduation celebration. When she was inside her house, she heard appellant
and Douglas arguing outside and heard Douglas say to appellant, “[s]tupid M.F.” 
Jernigan called the police department, but she explained that she was confused when
the police officers first approached Douglas’s house because Jernigan had contacted
the police department. Jernigan saw one of the officers speak with both Douglas and
appellant and then saw the officer handcuff and place appellant in the back seat of the
patrol car. However, Jernigan explained that, at that point, she went back inside her
house to call the police again and did not see any more of the incident. 
          Bundage, Campbell, and Hightower testified that, as they were walking down
a street near appellant’s house, they saw two police officers and a patrol car parked
in front of appellant’s driveway. They saw the officers let appellant, who was not
wearing handcuffs, out of the patrol car and saw appellant then walk inside his house. 
Campbell also testified that he actually saw an officer place appellant in the backseat
and then let appellant out of the backseat. Campbell further testified that he was not
exactly sure of the date that he saw appellant in the patrol car. Bundage and
Hightower also agreed that they were never closer than 75 to 100 feet from appellant
and the officers.
          Appellant testified that, on May 19, 1999, he, his family, and friends were
celebrating his high school graduation. His brother and Derek Pasey, a friend, were
playing basketball outside, and appellant was standing inside his garage when he
heard someone say, “M.F.” Appellant explained that he first thought his brother or
Derek had said, “M.F.,” but he then heard Douglas, who was sitting in her own yard
and watering her grass say, “M.F.,” again. Appellant further explained that, in
response, he told her, “You ‘M.F.’ My momma didn’t name me or my brother no
‘M.F.’” Jernigan came outside from the house when he heard appellant say, “M.F.,”
and, when Douglas yelled at Jernigan, Jernigan went back inside the house to call the
police department. About 30 minutes later, two police officers arrived in a patrol car
and first went to Douglas’s house. Then, the police officers drove to appellant’s
house. After asking for identification from appellant, his brother, and Pasey, one of
the officers asked appellant for his statement. The officer then escorted appellant to
the patrol car, handcuffed him, and placed him in the backseat while the officer
determined whether appellant had any outstanding warrants. Thereafter, the officer
removed the handcuffs and told appellant that he was free to leave. Appellant then
went back inside his house. 
          Appellant further testified that only he, his brother, and Pasey were present
when the police officers arrived and that Officer Morales never told appellant that he
was being placed under arrest. He stated that he first discovered that he had an
outstanding warrant for his arrest for the offenses of evading and resisting arrest when
a fire academy to which he had applied had conducted a background check. 
Ineffective Assistance
          In two points of error, appellant argues that his trial counsel rendered
ineffective assistance because his counsel failed to “call key witnesses to testify” and
failed to “return his calls or meet with [him] until two hours prior to the trial.”
          To prevail on a claim of ineffective assistance of counsel, a defendant must
prove, by a preponderance of the evidence, that (1) his counsel’s representation fell
below an objective standard of professional norms and that, (2) but for counsel’s
errors, there is a reasonable probability that the result of the proceedings would have
been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S. Ct.
2052, 2064-65, 2068 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); McKinny v. State, 76 S.W.3d 463, 470 (Tex. App.—Houston [1st Dist.] 2002,
no pet.). An appellant must satisfy both prongs of the Strickland test or the claim of
ineffective assistance will fail. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069;
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Our review of
counsel’s representation is highly deferential and presumes that counsel’s actions fell
within the wide range of reasonable and professional assistance. Bell v. State, 90
S.W.3d 301, 307 (Tex. Crim. App. 2002); McKinny, 76 S.W.3d at 470. 
          A Strickland claim must be “firmly founded in the record,” and the “record
must affirmatively demonstrate” the meritorious nature of the claim. Thompson, 9
S.W.3d at 813; McKinny, 76 S.W.3d at 470. When faced with a silent record as to
counsel’s strategy, we will not speculate as to counsel’s tactics or reasons for taking
or not taking certain actions. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994). “Rarely will a reviewing court be provided the opportunity to make its
determination on direct appeal with a record capable of providing a fair evaluation
of the merits of the claim involving such a serious allegation.” Thompson, 9 S.W.3d
at 813; McKinny, 76 S.W.3d at 470. However, a single egregious error of omission
or commission by counsel has been held to constitute ineffective assistance, even in
the absence of a record setting forth counsel’s reasons for the challenged conduct.
Vasquez v. State, 830 S.W.2d 948, 950 (Tex. Crim. App. 1992) (per curiam);
McKinny, 76 S.W.3d at 470-71. In the rare case where the record on direct appeal is
sufficient to prove counsel’s performance was deficient, an appellate court should
address the claim. Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App.
2000); McKinny, 76 S.W.3d at 471. In the absence of evidence of counsel’s reasons
for the challenged conduct, an appellate court commonly will assume a strategic
motivation if any can possibly be imagined and will not conclude the challenged
conduct constituted deficient performance unless the conduct was so outrageous that
no competent attorney would have engaged in it. Garcia, 57 S.W.3d at 440;
McKinny, 76 S.W.3d at 471.
          In his first point of error, appellant argues that his counsel rendered ineffective
assistance because his counsel “failed to call two key witnesses.” Appellant notes
that, (1) although appellant’s counsel did call four witnesses to testify on appellant’s
behalf, “[t]hese witnesses were not at the scene, but testified that they merely saw
portions of this incident from a distance”; (2) Officer Morales “testified that there
were approximately six to eight males that were playing basketball with [appellant]
at the time of the alleged offense”; (3) appellant, during his trial testimony,
“specifically mentioned” that his brother, John Dennis, and a friend, Derek Pasey,
“were at the scene” with appellant and “had been id’d [sic] by the officers”; (4) the
four witnesses who testified on appellant’s behalf “were [not] actually with
[appellant] at the time of the alleged offense”; and (5) “[t]here were no witnesses
called for the defense that [sic] were actually at the scene.” 
          We note that the failure to call particular witnesses during trial will not be
considered deficient performance of counsel absent a showing that such witnesses
were available and that the defendant would have benefitted from their testimony. 
King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); Rodd v. State, 886 S.W.2d
381, 384 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). The decision to call a
witness is generally a matter of trial strategy. Rodd, 886 S.W.2d at 384. 
          Here, appellant has failed to introduce any evidence that John Dennis and
Derek Pasey were available or that appellant’s defense would have benefitted from
the witnesses’ testimony. Id. Therefore, we cannot conclude that appellant’s counsel
was deficient in failing to produce Dennis’s and Pasey’s testimony. Accordingly, we
hold that appellant has not proved his claim of ineffective assistance by a
preponderance of the evidence in this regard. 
          We overrule appellant’s first point of error.
          In his second point of error, appellant argues that his counsel rendered
ineffective assistance because his counsel “failed to return his calls” and did not
“meet with [him] until two hours prior to the trial.” Appellant also notes that his
counsel “failed to meet with [him] to prepare for trial.” 
          Here, appellant has not demonstrated with evidence that is “firmly founded”
in the record or “affirmatively demonstrates” that appellant’s counsel first contacted
appellant two hours before the commencement of trial, that his counsel failed to
return appellant’s telephone calls, or that his counsel failed to adequately prepare
appellant for trial. Furthermore, although appellant filed a motion for new trial, he
asserted in his motion only that “the verdict in this cause is contrary to the law and
the evidence,” and, moreover, there is no evidence in the record that the trial court
ruled on appellant’s motion. Therefore, based on the record before us, we cannot
conclude that counsel’s performance was deficient concerning the challenged
grounds. Furthermore, in regard to the grounds asserted in his second point of error,
appellant has not demonstrated that, but for counsel’s performance, there was a
reasonable probability that the outcome of the trial would be different. An appellant
must satisfy both prongs of the Strickland test or the claim of ineffective assistance
will fail. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; Garcia, 57 S.W.3d at 440. 
Accordingly, we hold that appellant has not demonstrated that his trial counsel
rendered ineffective assistance by a preponderance of the evidence in this regard. 
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).